ANDRÉ BIROTTE JR.
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
RASHA GERGES (Cal. Bar No. 218248)
Assistant United States Attorney
OCDETF Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6530
     Facsimile: (213) 894-0142
     E-mail: rasha.gerges@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>       v.<br><br>JOHN MARK SOTELO, et al.,<br><br>             Defendants. | SA No. CR 09-412-DOC<br><br>GOVERNMENT'S POSITION REGARDING PRESENTENCE REPORT FOR DEFENDANT JEFFREY MORAN |

Pursuant to Federal Rule of Criminal Procedure 32(f), plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby files its position regarding the Presentence Report ("PSR") submitted by the United States Probation Office ("USPO") for defendant Jeffrey Moran ("defendant").

The government hereby concurs in the findings and calculations contained in the PSR.  The government further concurs with the USPO's recommendation of a sentence of 30 months

imprisonment, which is the low-end of the applicable advisory Guidelines range, followed by a three-year period of supervised release.

The recommendation letter by the USPO carefully and thoughtfully sets forth the reasons why a sentence within the advisory Guidelines range is appropriate.  Moreover, although defendant attempts to provide an "innocent" explanation for his conduct, he has a history of creating stories to avoid law enforcement detection.  As the PSR explains (¶ 51), this is not the first time defendant Moran has been involved in suspicious activities relating to firearms.  One of his co-defendants in this case, Gomez, was arrested and charged with possession of an assault weapon.  The weapon was registered to defendant Moran, and the co-defendant told officers that defendant Moran had given him the firearm to sell.  At that time, defendant Moran again gave an "innocent" (and non-credible) explanation – that he was currently providing psychological counseling to co-defendant Gomez's wife, and he mistakenly gave the firearm to co-defendant Gomez, who was going to be storing certain items for him.  As the PSR noted in footnote 3, at the time this incident occurred, defendant Moran's medical license had already been revoked.  And, the fact that he would have "mistakenly" given co-defendant Gomez the firearm is hard to believe.

Similarly, when defendant Moran was questioned in connection with the manufacturing of methamphetamine conspiracy (which also involved co-defendant Gomez), defendant Moran gave another "innocent" explanation for purchasing numerous packages of pseudoephedrine – he claimed that the pseudoephedrine was on

2

sale, and that he consumes a lot of it.  That explanation is not credible for several reasons.  First, the surveillance officers observed defendant Moran and co-defendant Gomez go into multiple stores to purchase several boxes of pseudoephedrine.  This conduct is known as "smurfing" – where individuals go to different stores on the same day to buy large quantities of pseudoephedrine, thereby avoiding the legal limitations placed on the number of packages that can be purchased from a particular store on a single day.  Second, as the PSR notes in footnote 4, although defendant Moran claimed that he consumes large quantities of pseudoephedrine, no over-the-counter pseudoephedrine was found in defendant Moran's house at the time of the execution of the search warrant.  Third, defendant Moran also admitted to ordering red phosphorous and iodine online, and providing those chemicals to co-defendant Gomez.  Of course, the pseudoephedrine, red phosphorous, and iodine are all essential ingredients to the manufacture of methamphetamine.

Based on the incredible statements made by defendant Moran, as well as his involvement in the conspiracy to manufacture methamphetamine, a sentence below the advisory Guidelines range is not warranted.  In the event the Court is considering sentencing defendant to a sentence below 30 months imprisonment, the government requests the opportunity to provide the live testimony of a cooperating defendant.  The government proffers that the cooperating defendant would be able to testify as to defendant Moran's role in the manufacturing of methamphetamine conspiracy, as well as provide testimony that would be relevant in understanding the history and characteristics of defendant

Moran. To this end, the government is concurrently submitting, under seal and <u>in camera</u>, a report summarizing the testimony of the cooperating witness.[1]

Dated: June 29, 2010

Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

   /s/
RASHA GERGES
Assistant United States Attorney
OCDETF Section

Attorneys for Plaintiff
United States of America

---

[1] The government will make the report available to defense counsel for viewing at any time prior to the sentencing, but will not provide a copy of the report for purposes of protecting the cooperating defendant.

4